The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: October 7 2015

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-30759 |
| | ) | |
| Sheria Player, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

**MEMORANDUM OF DECISION REGARDING MOTION TO REINSTATE STAY**

This case came before the court for hearing on Debtor's Motion to Reinstate Stay Regarding Secured Creditor Vibe Credit Union ("Motion") [Doc. #24] and Vibe Credit Union's ("Creditor") opposition [Doc. # 31]. In her Motion, Debtor seeks relief from the court's order granting Creditor relief from the automatic stay and asks the court to restore the parties to the same status they had before the granting of that motion.

The court held a hearing on the Motion that Debtor's counsel and Creditor's counsel attended in person. The court granted the parties leave to file additional information or documents and ordered any request for further hearing to be filed on or before August 14, 2015. [Doc. # 40]. Thereafter, Creditor filed supplemental information and documents in support of its position [Doc. # 43] and Debtor filed a supplemental brief [Doc. # 44]. Neither party requested a further hearing on the Motion.

The district court has jurisdiction over this Chapter 13 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of

Ohio. This is a core proceeding that the court may hear and determine under 28 U.S.C. § 157(b)(1) and (b)(2)(A) and (G).

**FACTUAL BACKGROUND**

On April 17, 2014, Debtor filed a prior Chapter 13 petition, which was dismissed on December 18, 2014, for failure to make plan payments. [Case No. 14-31380, Doc. # 33].[1] On March 16, 2015, Debtor commenced this case by filing a second Chapter 13 petition, which sets forth 1064 West Woodruff, Toledo, Ohio, as her residence address. Debtor's bankruptcy schedules include real property located at 8401 Oak Park Boulevard, Oak Park, Michigan ("Oak Park Property") as an asset of the bankruptcy estate and Creditor as holding an undisputed claim in the amount of $80,000 that is secured by a mortgage on the Oak Park Property. [Doc. # 1, pp. 8 & 13/50]. The Oak Park Property is located in Oakland County, Michigan.

Debtor's Chapter 13 plan provides that a mortgage arrearage of $12,000 would be paid to Creditor through the plan and that regular monthly mortgage payments would be paid outside the plan. [Doc. # 6, p. 2]. However, Creditor filed a motion for relief from stay on March 24, 2015. [Doc. # 12]. The Motion stated that Debtor owed Creditor $92,033.10 and that the value of the Oak Park Property was $63,800. [*Id.* at 5]. Debtor did not oppose the motion, and the court granted it on April 16, 2015, terminating the automatic stay with respect to Creditor.[2] [Doc. # 16]. Under Bankruptcy Rule 4001(a)(3), the court's order granting Creditor's motion for relief from stay was stayed until 14 days after its entry, or until April 30, 2015. Fed. R. Bankr. P. 4001(a)(3).

Before Debtor commenced this case, Creditor had initiated a foreclosure by advertisement under Michigan law. On January 3, 2015, Creditor's attorney sent to Debtor by certified mail a Notice of Breach and Intent to Accelerate Mortgage Balance, in accordance with the provisions of the mortgage. [*See* Doc. # 43, Ex. A, ¶ 22 and Ex. B]. The notice was sent to both the Oak Park Property address and the Toledo, Ohio address and advised Debtor that unless the default was cured within thirty days, Creditor would proceed with foreclosure. [*Id.*, Ex. B]. Debtor failed to cure the default. Creditor asserts, and Debtor does

---

[1] The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

[2] The court notes that, due to the dismissal of Debtor's prior Chapter 13 case within the preceding year, the automatic stay "with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease" was statutorily terminated with respect to Debtor on April 15, 2015, thirty days after the filing of this case. *See* 11 U.S.C. § 362(c)(3)(A).

not dispute, that a mortgage foreclosure notice [*id.*, Ex. C] was published weekly in the Oakland County Legal News for five consecutive weeks beginning on February 11, 2015, as statutorily required. *See* Mich. Comp. Laws § 600.3208. The published notice indicates that the foreclosure sale would occur at 10:00 a.m. on March 17, 2015, and set forth all of the information required under the applicable Michigan statute. [Doc. # 43, Ex. C]; *see* Mich. Comp. Laws § 600.3212. On February 13, 2015, a copy of the published notice was also posted in a conspicuous place upon the premises of the Oak Park Property. [*See* Doc. # 43, Ex. D]. In addition, the published notice and a letter explaining the sale was sent by certified mail to Debtor at both the Oak Park Property and Toledo, Ohio addresses. [*Id.*, Ex. E].

After Debtor commenced this Chapter 13 case on March 16, 2015, the Oakland County Sheriff adjourned the foreclosure sale for one week on a week to week basis from March 17 to May 5, 2015, by posting a notice of adjournment each week at the place where the sale was to occur. [*See id.*, Ex. F; Mich. Comp. Laws § 600.3220]. The final notice of adjournment posted on April 28, 2015, adjourned the sale to 10:00 a.m. on May 5, 2015. [*Id.* at unnumbered p. 14]. The foreclosure sale was conducted on May 5, 2015, after the stay of the order under Bankruptcy Rule 4001(a)(3) expired, and Creditor was the highest bidder with a bid of $94,940.22. [*See* Doc. # 31, p. 11/16].

Debtor's Motion to Reinstate Stay as to Creditor was filed on June 21, 2015.

## LAW AND ANALYSIS

The ultimate purpose of Debtor's Motion is to enable her to proceed with confirmation of her Chapter 13 plan, which includes a cure and maintain provision, 11 U.S.C. § 1322(b)(5), with respect to the mortgage debt owed to Creditor. Regardless of whether the mortgaged property is the debtor's principal residence, a debtor's right to cure a default on the mortgage terminates on the foreclosure sale of the property. *See Federal Land Bank of Louisville v. Glenn (In re Glenn),* 760 F.2d 1428, 1435 (6th Cir. 1985), *cert.denied*, 474 849 (1985) (pre-1994 case under 11 U.S.C. § 1322(b), holding that the cut-off date of the statutory right to cure defaults is the sale of the mortgaged premises where the mortgage debt at issue was secured by the debtor's principal residence); *Oliver v. Bankfirst Fin'l Servs. (In re Oliver)*, 407 B.R. 442 (Table), 2009 WL 394435, *4, 2009 Bankr. LEXIS 261, *10-11 (B.A.P. 6th Cir. Feb. 17, 2009) (citing *Agee v. Fenton Poured Walls, Inc. (In re Agee)*, 339 B.R. 561 (E.D. Mich. 2005)), finding *Glenn* applicable and holding that the cut-off date for curing defaults relating to mortgage debt secured by property that was not the debtor's principal residence was date of foreclosure sale); *cf.* 11 U.S.C. § 1322(c). Thus, in her Motion, Debtor seeks relief from the court's order granting Creditor relief from the automatic stay, which

enabled Creditor to proceed with its non-judicial foreclosure sale of the Oak Park Property, and asks the court to "reverse the effects" of the foreclosure sale. [Doc. # 24, p. 2]. Debtor brings her Motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable in this case by Federal Rule of Bankruptcy Procedure 9024, 11 U.S.C. § 105(a) and the All Writs Act.

The court initially notes that simply reinstating the stay as to Creditor, as Debtor has captioned her Motion, would not affect the validity of the foreclosure sale at issue since the sale already took place when the stay was no longer in effect as to Creditor.[3] Reinstating the stay would not pave the way for the relief she is ultimately seeking, namely, setting aside the foreclosure sale in order to allow her to pursue the cure and maintain provisions in her Chapter 13 plan. Returning the parties to the same status they had before relief from stay was granted would require, first, setting aside the state non-judicial foreclosure sale, and, second, vacating the order granting relief from stay to prevent renewed Creditor action to foreclose on its mortgage. The court thus addresses Debtor's motion in that context.

## I. Rule 60(b)(1)

Although Debtor does not specify any particular subdivision of Rule 60(b), she argues that mistake, inadvertence, and excusable neglect permit the relief requested. Under Rule 60(b)(1), the court "may relieve a party" from a final order for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The court's order granting Creditor's motion for relief from stay is such a final order. *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.),* 801 F.2d 186, 190 (6th Cir. 1986). But the court construes the procedural reach of Rule 60(b) as limited to addressing its own final judgments, orders and proceedings. *See* 12-60 *Moore's Federal Practice-Civil* § 60.60[1]("Because a Rule 60(b) motion presupposes the existence of a prior federal court judgment, order, or proceeding, it is clear that the drafters of the rule contemplated that the motion...would always be brought 'in the court and in the action in which the judgment was rendered.'"). Rule 60(b) does not establish a procedural platform for this court to undo the state non-judicial foreclosure sale. *Cf.* 12-60 *Moore's Federal Practice-Civil* § 60.84 (federal court's ability to exercise jurisdiction to set aside state court judgment is doubtful). *But cf.* Rule

---

[3] The relief required to accomplish Debtor's goal is more substantial than this court routinely encounters in addressing requests to vacate a stay relief order and to reinstate the automatic stay. The Motion shows the difference between a judicial foreclosure process and a non-judicial foreclosure by advertisement process. Ohio is a judicial foreclosure state. Because of the length of time involved in reviving a previously stayed judicial mortgage foreclosure action, a debtor's property has generally not been sold at a sheriff's sale before the stay can be reinstated if appropriate. With permitted adjournments of the non-judicial foreclosure sale, however, the sheriff's sale of the Oak Park Property was able to be completed quickly after the court entered its order granting relief from stay and the time period in Rule 4001(a)(3) expired.

4

60(d) ("This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order or proceeding...") In analyzing Debtor's request for relief under Rule 60(b), the court is therefore addressing only that aspect of the relief Debtor seeks that involves vacating its own order granting Creditor relief from the automatic stay and reinstating the automatic stay as to further actions by Creditor.

The Sixth Circuit has recognized that the word "may" in Rule 60(b) allows a trial court discretion in granting relief from judgments and final orders. *McCurry v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002). Because such relief "is circumscribed by public policy favoring finality of judgments and termination of litigation. . . the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 585 (6th Cir. 2014) (citing *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008)).

The Supreme Court has instructed that the term "neglect" should be given its ordinary meaning: "to give little attention or respect to a matter, or . . . to leave undone or unattended to *especially through carelessness.*" *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 388 (1993). Relying on the principle that "clients must be held accountable for the acts and omissions of their attorney," in assessing whether there is excusable neglect, the Supreme Court stated that "'the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable.'" *Id.* at 396-97 (emphasis in original). The Sixth Circuit has explained that Rule 60(b)(1) "does not permit litigants and their counsel to evade the consequences of their legal positions and litigation strategies, even though these might prove unsuccessful, ill-advised, or even flatly erroneous." *McCurry*, 298 F.3d at 595. In *McCurry,* the court further explained that even "the type of action or inaction that leads to successful malpractice suits by the injured client – do not qualify as 'mistake' or 'excusable neglect' with the meaning of Rule 60(b)(1)." *Id.* (citations omitted).

Relief under Rule 60(b)(1) in this case is premised on attorney error. Debtor argues that her attorney did not file a response to Creditor's motion for relief from stay because he assumed that the motion and the proposed plan crossed in the mail so that the motion was filed before Creditor was aware of the cure and maintain provision of her plan and that he assumed that Creditor, on becoming aware of her plan, would "drop any opposition" to it. [Doc. # 24, p. 2]. Debtor further argues that after learning that the court had granted Creditor relief from the automatic stay, her attorney contacted Creditor's attorney by email in an attempt, albeit unsuccessfully, to dissuade Creditor from proceeding with a foreclosure sale. Debtor's

5

argument is, in essence, that her attorney's litigation strategy of relying on Creditor to take action or refrain from taking action constitutes mistake or excusable neglect. However, the foregoing authority makes clear that an attorney's litigation strategies are not a basis for relief under either the mistake or excusable neglect element of Rule 60(b)(1).

**II. 11 U.S.C. § 105(a)**

Debtor argues that § 105(a), and in conjunction therewith, the All Writs Act, enables this court to exercise its equitable powers to, in essence, set aside the foreclosure sale and reimpose the automatic stay with respect to Creditor. The court finds that use of its equitable powers under either § 105(a) or the All Writs Act is inappropriate under the circumstances of this case.

Section 105(a) empowers the court to issue such orders as are "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. The statute "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir. 1986); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000). Equitable powers under § 105(a) may be exercised only in a manner consistent with the provisions of the Bankruptcy Code. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 382 (2007) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)); *Law v. Siegel*, –U.S–, 134 S. Ct. 1188, 1194-95 (2014).

In support of her position, Debtor cites several cases for the proposition that the court can "undo what already has been done in extraordinary circumstances." [Doc. # 24, p. 3, citing *Piccolo v. Dime Savings Bank of N.Y.,* 145 B.R. 753 (N.D.N.Y. 1992); *Wayne United Gas Co. v. Owens Ill. Glass Co.,* 300 U.S. 131 (1937); *Otte v. Mfrs. Hanover Commercial Corp. (Texlon Corp.)*, 596 F.2d 1092 (2d Cir. 1979)]. In *Piccolo*, the district court addressed the power of a bankruptcy court under § 105(a) to set aside a state foreclosure sale that complied with applicable state law. The foreclosure sale was not conducted in violation of the automatic stay; rather, as in this case, it took place under the authority of an order specifically lifting the stay. *Piccolo*, 145 B.R. at 758.[4] The court adopted the general rule that a bankruptcy court should not

---

[4] The court has independently considered whether Creditor's adjournment of the foreclosure sale from week to week as permitted by Michigan law, Mich. Comp.Laws § 600.3220; *Worthy v. World Wide Financial Services, Inc.*, 347 F.Supp. 502, 510-11 (E.D Mich. 2004), *aff'd* 192 Fed. App'x 369 (6th Cir., July 28, 2006); *see Munaco v. Bank of America*, 513 Fed. App'x 508, 511 (6th Cir. Jan. 31, 2013), while the automatic stay was still in effect violated the automatic stay. Actions taken in violation of the automatic stay are invalid and voidable and shall be voided absent limited equitable circumstances. *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993). A federal district court sitting in Michigan and applying Michigan law governing foreclosure by advertisement decided that adjournment of a foreclosure sale by advertisement from week to week while the automatic stay is in effect does not violate the automatic stay. *Worthy v. World Wide Financial Services, Inc.*, 347 F.Supp. at

6

exercise its equitable powers to upset a perfectly valid state foreclosure proceeding absent "unusual and compelling circumstances or a particularly egregious fact situation." *Id.* at 758-59. Finding that the errors of the debtors' attorney and the fact that debtors had children, facts relied upon by the bankruptcy court, did not constitute unusual and compelling circumstances or an egregious fact situation, the district court reversed the bankruptcy court's order setting aside the foreclosure sale. *Id*. at 759.

Non-judicial foreclosures, or foreclosures by advertisement, are governed by statute under Michigan law. *Conlin v. Mortgage Elec. Registration Sys.*, 714 F.3d 355, 359 (6th Cir. 2013). In this case, the record before the court shows that the foreclosure sale complied with Michigan law. The statutory scheme is meant to impose order on the foreclosure process while affording finality and security to purchasers of foreclosed properties. *Id.* As a result, the ability for a court to set aide a sheriff's sale has been "drastically circumscribed" by Michigan courts. *Id.* The law is well-settled in Michigan that foreclosures can only be set aside if "very good reasons" exist for doing so. *Markoff v. Tournier*, 229 Mich. 571, 575 (1925). In other words, "it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Sweet Air Inv. Inc. v. Kenney*, 275 Mich.App. 492, 497, 739 N.W.2d 656 (2007) (citations and internal quotations omitted).

Debtor has made no such showing here. Debtor argued at the hearing that, in light of her pending bankruptcy proceeding at the time of the sale, Creditor incorrectly asserted in support of the foreclosure sale that no suit or proceeding had been instituted to recover the debt. *See* Mich. Comp. Laws § 600.3204(1)(b) (providing that a party may foreclose a mortgage by advertisement if all of the listed circumstances exist, including that "[a]n action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage. . . ."). However, Debtor's bankruptcy case is not a proceeding instituted at law to recover the mortgage debt at issue and is not a basis for finding the foreclosure sale invalid.

And, as in *Piccolo,* the facts relied upon by Debtor, namely, the unsuccessful litigation strategy of Debtor's counsel and Creditor's unwillingness to accept Debtor's proposed plan rather than pursuing foreclosure, do not constitute unusual and compelling circumstances or an egregious fact situation. Moreover, this is Debtor's second attempt in a year to cure through Chapter 13 the burgeoning default

---

508-509. The United States Court of Appeals for the Sixth Circuit affirmed *Worthy*, albeit in an unpublished decision adopting the district court's opinion. This court is persuaded by the reasoning of *Worthy* and its affirmance that adjournment of the sale by advertisement from week to week in accordance with the Michigan statute effectuates the purposes of § 362(a) by preserving the status quo until the bankruptcy process is completed or, as in this case, the creditor obtains relief from the automatic stay. The court finds that Creditor's postponement of the sale on a week to week basis did not violate the automatic stay. Thus the sale to Creditor is not otherwise invalid under the authority of *Easley* based on an argument that notice of the sale date was void.

amount on Creditor's mortgage debt encumbering the Oak Park Property. Debtor's first attempt was unsuccessful due to dismissal of the case when she did not maintain the payments required under her confirmed plan. Thus the equities do not necessarily favor Debtor under these circumstances. To the extent this court has authority to set aside a state foreclosure sale, the circumstances in this case do not warrant such an exercise of the court's discretion.

Other cases relied upon by Debtor do not persuade the court otherwise. In *Marcus Hook Development Park, Inc.,* an order was entered approving the sale of realty free and clear of all liens, and a later order was entered confirming the Chapter 11 debtor's reorganization plan, which provided that the creditor's lien would remain attached to the realty and would be dealt with by the purchaser. *Marcus Hook Development Park, Inc.,* 143 B.R. at 652. The creditor, however, was not served with the motion to sell or the order confirming sale of the realty. *Id* at 652-53. Over three years later, the debtor file a motion for final decree and the purchaser objected, pointing out the inconsistent orders and asking the bankruptcy court to remedy the problem. *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 263 (3d Cir. 1991). The bankruptcy court did not address the merits of the purchaser's objection, and denied relief because it did not believe it had authority to do so. *Id.*

On appeal, the Third Circuit noted that "this is a case of common sense" and that both orders could not be given effect. *Id.* The appellate court concluded that § 105(a) gave the bankruptcy court "the power and the jurisdiction to enforce its valid orders." *Id.* at 266. On remand, the bankruptcy court determined that the creditor had not received notice that comported with due process that its lien against the debtor's property was to be divested by the sale. *Marcus Hook Development Park, Inc.*, 143 B.R. at 662. The sale order was not valid with respect to treatment of the creditor's lien. The court, therefore, gave precedence to its order confirming the debtor's plan of reorganization and modified the sale order to the limited extent that it did not divest the creditor's lien. *Id.*

This court does not read *Marcus Hook Development Park, Inc.*, as standing for the proposition that § 105(a) authorizes it to vacate a valid order where Rule 60(b) relief is unavailable. It simply stands for the proposition stated by the Third Circuit that § 105(a) gives the court the power to enforce its valid orders. Unlike the circumstances in *Marcus Hook Development Park, Inc.*, Debtor does not seek enforcement of a valid order, rather, she seeks to set aside a valid state foreclosure sale and vacate a valid order of this court.

Finally, in *Otte,* the bankruptcy court had entered an ex parte financing order in a Chapter XI case that included provisions not authorized under the Bankruptcy Act. Although the bankruptcy court later

8

acknowledged the error in entering the order, it denied the trustee's motion to modify it, believing the court was precluded from doing so. *Otte*, 596 F.2d at 1095. The district court reversed and directed that the trustee's motion be granted. *Id.* The creditor appealed, and the Second Circuit Court of Appeals affirmed the district court opinion, rejecting the creditor's argument that the trustee's attack on the financing order came too late. *Id.* at 1099-101. Recognizing that the financing order had become final before the trustee's motion was filed and finding that the trustee was not entitled to relief under Rule 60(b), the Court of Appeals nevertheless found the trustee was entitled to prevail under the bankruptcy court's inherent powers described in *Wayne United Gas Co. Id.* at 1100. In that case, the Supreme Court stated that a bankruptcy court may exercise its discretion and grant a rehearing even after the time for appeal has expired "if no intervening rights will be prejudiced by its action." *Wayne United Gas Co.,* 300 U.S. at 137-38.

Other courts have declined to expand their authority to grant relief from final orders beyond the authority provided in the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure. *See Gekas v. Pipin (In re Met-L-Wood Corp.),* 861 F.2d 1012, 1018 (7th Cir. 1988); *In re Watford*, 192 B.R. 276, 278-80 (Bankr. M.D. Ga. 1996). As noted in *Watford*, the *Otte* court's reliance on the *Wayne* decision was misplaced as the *Wayne* case was decided in 1937, prior to the September 16, 1938, effective date of the Federal Rules of Civil Procedure. *Watford*, 192 B.R. at 279. Instead, the court in *Watford* followed the approach taken by the Seventh Circuit in *Gekas. Id.* In *Gekas,* Judge Posner explained:

> Long before there was a Rule 60(b), bankruptcy courts exercised what they conceived to be, and what in fact has traditionally been regarded as, an inherent judicial power to reconsider their judgments within a reasonable time, including judgments confirming sales. Now that there is a Rule 60(b), expressly applicable to bankruptcy as we have seen, the inherent power seems otiose; and although the cases continue to refer to it, they define it in terms of Rule 60(b). As a natural development from those cases, as well from the text of Bankruptcy Rule 9024, which applies Rule 60(b) to bankruptcy proceedings, we hold that confirmed sales[5]—which are final judicial orders—can be set aside only under Rule 60(b). We conclude that the old inherent power to reconsider bankruptcy orders has been merged into the rule.

*Gekas*, 861 F.2d 1012, 1018 (7th Cir. 1988) (internal citations omitted); *see In re Mulvania*, 214 B.R. 1, 8-9 (B.A.P. 9th Cir. 1997) (holding that "a bankruptcy court no longer has an inherent power to reconsider its prior orders, rather its power to reconsider is governed by Fed. R. Bankr. P. 9024 applying Fed. R. Civ. P. 60").

The court finds the reasoning in *Gekas* persuasive. Accordingly, the court finds that exercise of its

---

[5] The order confirming sale to which Judge Posner is referring is a bankruptcy court order confirming a sale, not a state court order confirming a sale.

9

equity power under § 105(a) in order either to set aside the state law non-judicial foreclosure sale or to vacate the order granting Creditor relief from stay is inappropriate.

### III. All Writs Act

The court also finds that the exercise of its power under the All Writs Act is inappropriate in this proceeding. The All Writs Act provides that the federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). However, the United States Supreme Court has described the All Writs Act as a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). A party must show "that [her] right to issuance of the writ is 'clear and indisputable'" and "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* at 381.

To the extent that invocation of the All Writs Act is even appropriate, *see Cooey v. Strickland*, 589 F.3d 210, 234 (6th Cir. 2009) (stating that the All Writs Act "provides 'a residual source of authority' when no other provision addresses the particular issue at hand, not an alternative to available but unavailing procedures concerning the matter at hand"); *Florida Med. Ass'n, Inc. v. U. S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979) ("All Writs Act does not empower a district court 'to abandon the Rules whenever they prove procedurally inconvenient'"), Debtor has not met her burden of showing that she has a clear and indisputable right to issuance of the requested writ. As discussed above, the circumstances relied upon in this case as a basis for the relief sought do not constitute such extraordinary circumstances warranting the "drastic and extraordinary" remedy requested.

### CONCLUSION

For all of the foregoing reasons, Debtor is not entitled to the relief requested and her Motion will be denied. The court will enter a separate order in accordance with this Memorandum of Decision.

###